## Ham Appeal

*Denis J. Byrne*, for appellant.

*Eric S. Coates*, for East Nottingham Township.

KURTZ, JR., P. J., February 27, 1974.—During the summer of 1970, Nathan Ham, appellant in this proceeding, invoked the provisions of the Act of June 24, 1968, P. L. 237, sec. 1, et seq., 43 PS §217.1, et seq., having to do with collective bargaining between police-

men and their public employers, thereby seeking to establish the terms and conditions of his employment as the appellee township's only police officer for the year 1971. After it became evident that agreement could not be reached through the machinery of bargaining, arbitration, as provided for by section 4 of that statute, 43 PS §217.4, was undertaken with the result that a determination and award was made by a board of arbitrators on December 30th.

Appellant continued in the employ of East Nottingham Township during the early months of 1971. A letter was sent to him by appellee's counsel under date of February 16, 1971, which voiced the supervisors' concern that the police officer's reports which they had requested him to file periodically were not completed as requested. Under date of March 10, 1971, the secretary of the board of supervisors sent a letter to appellant voicing like concern. A form of report was submitted to the police officer with the instruction that it be completed so as to make it a chronology of his police activity for each two-week period of his employment. He was asked to take a physical examination at the township's expense and appointments were arranged for such an examination to be made but appellant refused to keep those appointments.

On May 7, 1971, Joseph C. Fisher, one of the members of the board of supervisors, who was also its secretary, addressed a letter to the board in which he indicated that he was "hereby" filing charges against appellant under the provisions of the "Police Tenure Act." This communication contained the following specifications:

"(A) Neglect and/or disobedience of the order to take a physical examination at the expense of the Township.

"(b) Neglect and/or disobedience of official duty to submit detailed reports of police activities."

By letter bearing the same date, the supervisors addressed a communication to appellant in which it was indicated that the charges above listed had been filed. This communication also indicated that if the police officer desired a public hearing, he should so inform the supervisors, and that he should submit written answers to the charges within five days. The letter also pointed out that if appellant requested a hearing, it would be held on May 17, 1971, and further that "Pending final determination of these charges you are hereby suspended without pay effective May 17, 1971." This letter, a copy of which is in evidence, was signed by each of the three supervisors.

Through a letter dated May 10, 1971, addressed to the supervisors, counsel for appellant purported to make a written answer to the charges by asserting that appellant was in good health and that the requirement of a physical examination was not "one of the 'terms and conditions of (appellant's) employment' provided for in the award of the Board of Arbitration." That letter also asserted the position that the filing of a detailed report was likewise not included within the terms and conditions of the arbitration award.

A hearing was held by the board of supervisors on May 19, 1971. Although the facing sheet on the record of testimony taken at that hearing would indicate that the complete board of supervisors, including supervisor Fisher presided at that time, the record itself indicates that Fisher appeared as the only township witness. Although there is no documentary evidence before us which indicates what action was finally taken by the board, paragraph 8 of the appeal filed in this court, which is admitted in the answer filed by appellee

avers: "8. Thereafter on June 14, 1971, at a public meeting, without any vote taken or motion being made, the Chairman of the Board of Supervisors announced that 'we are going to uphold the charges and dismiss Mr. Ham.' " This appeal was filed August 10, 1971.[1]

Appellee seeks to quash the appeal, claiming that it was not timely filed. We do not believe that this is the case. See Vega Appeal, 383 Pa. 44 (1955). For that reason, we will proceed to other considerations.

The statute under which these proceedings were conducted, the Act of June 15, 1951, P. L. 586, sec. 1, et seq., 53 PS §811, et seq., has to do with the removal of policemen in certain boroughs and townships. Section 2 thereof, as amended, 53 PS §812, specifies the reasons for which suspension or removal may be decreed. The last sentence of that section provides: "A written statement of any charges made against any person so employed shall be furnished to such person within five days after the same are filed." Section 4 thereof, 53 PS §814, contains the provisions having to do with hearings on dismissal and provides, inter alia, that if a policeman charged as aforesaid shall demand a public hearing, he may make written answer to the charges filed against him, after which the "appointing authority" shall grant him a public hearing. It provides further: "At any such hearing, the person against whom the charges are made may be present in person and by counsel. The appointing authority may suspend any such person without pay pending the determination of the charges against him, but in the event the appointing authority fails to uphold the charges,

---

[1] This case was originally assigned to the Hon. Ralph W. Kent, whose term of appointment expired the first Monday of January 1974, before decision was rendered. Thereafter, the writer of this opinion heard argument, after which this disposition is being made.

then the person sought to be suspended or removed shall be reinstated with full pay for the period during which he was suspended, and no charges shall be officially recorded against his record." Section 5 thereof, 53 PS §815, makes provision for an appeal to be taken by a suspended or dismissed employe to the court of common pleas of the county in which he was employed.

Appellant contends that he was not accorded due process of law by the proceedings which led up to his dismissal because his accuser sat as a member of the court which tried him, and also because other members of the board, before which he was tried, had already made up their minds as to the decision which they would render before his testimony was heard. In support of these contentions, he points to a colloquy which occurred at the conclusion of the presentation of the township's testimony from which he would have us infer that the hearing board did not then contemplate that appellant and his witnesses would be heard. In addition, there is uncontradicted testimony on the record to the effect that, about a month before the hearing, the chairman of the board of supervisors had told appellant that if he, appellant, "kept on fooling around with that son of a bitch in West Chester" (presumably appellant's counsel) he wasn't going to have a job. We have already noted that the record does not reveal how each of the supervisors voted upon the question; indeed, there is no evidence that a formal vote was ever taken.

In Schlesinger Appeal, 404 Pa. 584 (1961), it was held that when a prosecutor and a judge were combined in one body, the accused was denied a fair hearing, to which due process of law entitled him. See also, Gabauer v. Civil Service Commission, 6 Comm. Ct. 646, 658 (1972). However, it should also be observed that due process is not denied merely because one who

sat as a member of a civil service commission was also a member of the borough council which had performed certain investigatory functions preliminary to the institution of charges under civil service procedures: Gabauer, supra. So, too, in Vandergrift Borough v. Polito, 407 Pa. 286 (1962), it was held that due process did not require that civil service commission members who had earlier heard and decided the charges against a policeman which led to his removal be disqualified when those charges were being judged a second time at the direction of the Supreme Court because improper evidence was presented at the first hearing.

On the other side of the picture, a board of censors of a bar association cannot prefer charges against one of its members and then try those charges when such action results in the attorney's disbarment (Schlesinger, supra); a member of a fire board, which originally complained about a policeman's action, cannot sit as a member of the civil service commission which tried him upon those charges (Gardner v. Repasky, 434 Pa. 126 (1969)); and a borough solicitor, who represents the borough preferring charges against a policeman, cannot act as the legal adviser to the civil service commission which tried those charges: Donnon v. Downingtown Civil Service Commission, 3 Comm. Ct. 366 (1971).

As we have already observed, the secretary of the board of supervisors involved in this case presented the charges here under review to the board, signed with the other supervisors the copy of the charges served upon appellant and testified in support of those charges when the matter came on for hearing. Whether he participated in the ultimate decision to dismiss does not appear. If that were the only evidence to which appellant could point to sustain his position that he was denied due process, we might be inclined to dismiss his contention. However, there is also evidence, to

which we have already referred, which would indicate that at least one of the remaining two supervisors had expressed an opinion indicating that he had decided to vote for appellant's dismissal prior to the hearing. Judicial and quasi-judicial tribunals must not be biased. If they are, the requirements of due process of law have not been met: Donnon, supra, at page 368.

We have no difficulty concluding that at least two members of this board were biased. For that reason, the decision of the board of supervisors from which this appeal has been taken will be and is hereby reversed. The Board of Supervisors of East Nottingham Township is hereby ordered to reinstate appellant as the police officer of said township as of the date of suspension, i. e., May 17, 1971, thereby according to him all the privileges and benefits of that position so long thereafter as the office of township policeman was lawfully maintained.[2]

---

[2] We have been advised that on June 14, 1971, the supervisors of the township discontinued the office of township policeman. We do not here express an opinion as to the legality or validity of that action.